1
2
3
4
5
6
7

The Honorable Marsha J. Pechman

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

AMAZON.COM, INC., a Delaware corporation,

11

Plaintiff,

12

v.

13

ROBOJAP TECHNOLOGIES LLC, a
Washington limited liability company;
SANDEEP SINGH, an individual; QUATIC
SOFTWARE SOLUTIONS PVT. LTD., a
foreign company; HITESH KUMAR
SACHDEVA, an individual; and GUREEN
PAWAR, an individual,

14
15
16
17

Defendants.

No. 2:20-cv-694-MJP

PLAINTIFF AMAZON.COM,
INC.'S MOTION FOR DEFAULT
JUDGMENT

NOTE ON MOTION CALENDAR:
OCTOBER 18, 2021 (LCR 7(d)(1))

18
19
20
21
22
23
24
25
26
27

AMAZON'S MOTION FOR DEFAULT JUDGMENT
(2:20-CV-694-MJP)

# **<u>TABLE OF CONTENTS</u>**

**Page**

I.   INTRODUCTION ................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................. 1

    A.   Amazon Alexa, Echo Devices & Technical Support ........................... 1

    B.   Amazon Is a Trusted Brand .................................................................. 2

    C.   Quatic Software's Fraudulent Scheme .................................................. 4

        1.   Tech Support Scams ..................................................................... 4

        2.   The Players in Quatic Software's Tech Support Scheme.................. 4

        3.   Quatic Software Targets Victims Seeking Help with Amazon
            Alexa Devices ............................................................................. 5

        4.   Quatic Software's Sale of Fraudulent Tech Support Services ............ 14

        5.   The Financial Consequences of the Scheme. ....................................... 22

III. ARGUMENT ...................................................................................... 24

    A.   The Court Has Jurisdiction to Enter Default Judgment................................... 24

    B.   Amazon Is Entitled to a Default Judgment................................................. 26

        1.   First *Eitel* Factor:  Amazon Will Be Prejudiced Without a
            Default Judgment......................................................................... 26

        2.   Second and Third *Eitel* Factors:  Amazon's Well-Pleaded
            Complaint & Supporting Evidence Establish Quatic Software's
            Liability Under the Lanham Act.......................................................... 26

        3.   Fourth *Eitel* Factor:  Quatic Software's Conduct Warrants the
            Damages Amazon Seeks ................................................................ 30

        4.   Fifth *Eitel* Factor:  The Facts Are Undisputed ..................................... 31

        5.   Sixth *Eitel* Factor:  Quatic Software's Failure to Appear and
            Obtain Counsel Is Inexcusable ........................................................... 32

        6.   Seventh *Eitel* Factor:  The Policy Favoring Decisions on the
            Merits Is Not Dispositive Where Quatic Software Knowingly
            Abandoned Its Defense................................................................... 32

    C.   Amazon Is Entitled to Statutory Damages ..................................................... 33

        1.   Defendants Willfully Used Counterfeit Amazon Trademarks ............. 34

2.     A $5,050,000 Statutory Damages Award Is Reasonable Based on Quatic Software's Extensive and Deliberate Abuse of the Amazon Trademarks ............................................................................ 35

D.     Amazon Is Entitled to Injunctive Relief ......................................................... 37

1.     Amazon Has Suffered Irreparable Harm ............................................. 38

2.     Monetary Damages Alone Are Inadequate ......................................... 39

3.     The Balance of Equities Favors a Permanent Injunction ..................... 39

4.     The Public Interest Would Be Served By a Permanent Injunction ............................................................................................... 40

IV.     CONCLUSION ............................................................................................................ 40

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
**Federal Cases**

4
*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
5
    457 F.3d 1062 (9th Cir. 2006) ..................................................................................30

6
*Beck v. Pike*,
    2017 WL 530354 (W.D. Wash. Feb. 9, 2017) ..........................................................34

7
*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
8
    174 F.3d 1036 (9th Cir. 1999) ..................................................................................30

9
*Chan v. Soc'y Expeditions, Inc.*,
    39 F.3d 1398 (9th Cir. 1994) ....................................................................................27

10
*Coach Servs., Inc. v. YNM, Inc.*,
11
    2011 WL 1752091 (C.D. Cal. May 6, 2011) ......................................................38, 41

12
*Craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ..................................................................33

13
*Curtis v. Illumination Arts, Inc.*,
14
    33 F. Supp. 3d 1200 (W.D. Wash. 2014) ..........................................................28, 33

15
*CytoSport, Inc. v. Vital Pharm., Inc.*,
    617 F. Supp. 2d 1051 (E.D. Cal. 2009) ..................................................................42

16
*DC Comics v. Towle*,
17
    802 F.3d 1012 (9th Cir. 2015) ..................................................................................36

18
*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008) ....................................................................................36

19
*Digby Adler Grp. LLC v. Image Rent a Car, Inc.*,
20
    79 F. Supp. 3d 1095 (N.D. Cal. 2015) ..............................................................31, 35

21
*Dream Games of Ariz. v. PC Onsite*,
    561 F.3d 983 (9th Cir. 2009) ....................................................................................37

22
*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
23
    142 F.3d 1127 (9th Cir. 1998) ..................................................................................29

24
*eBay, Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ................................................................................................40

25
*Eitel v. McCool*,
26
    782 F.2d 1470 (9th Cir. 1986) .......................................................................*passim*

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

*Fair Hous. of Marin v. Combs*,
    285 F.3d 899 (9th Cir. 2002) ................................................................................26

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,
    778 F.3d 1059 (9th Cir. 2015) ..............................................................................36

*Freecycle Network, Inc. v. Oey*,
    505 F.3d 898 (9th Cir. 2007) ................................................................................30

*Getty Images (US), Inc. v. Virtual Clinics*,
    2014 WL 358412 (W.D. Wash. Jan. 31, 2014) ....................................................34

*HICA Educ. Loan Corp. v. Warne*,
    2012 WL 1156402 (N.D. Cal. Apr. 6, 2012) ........................................................35

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ................................................................................27

*In re Tuli*,
    172 F.3d 707 (9th Cir. 1999) ................................................................................26

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*,
    559 F.3d 985 (9th Cir. 2009) ................................................................................42

*Jackson v. Sturkie*,
    255 F. Supp. 2d 1096 (N.D. Cal. 2003) ...............................................................41

*Kinsley Tech. Co. v. Ya Creations, Inc.*,
    2021 WL 2227394 (C.D. Cal. May 3, 2021) ........................................................40

*MAI Sys. Corp. v. Peak Comput., Inc.*,
    991 F.2d 511 (9th Cir. 1993) ................................................................................40

*Microsoft Corp. v. Nop*,
    549 F. Supp. 2d 1233 (E.D. Cal. 2008) ...............................................................37

*MySpace, Inc. v. Wallace*,
    498 F. Supp. 2d 1293 (C.D. Cal. 2007) ...............................................................40

*Nautilus, Inc. v. Chunchai Yu*,
    2011 WL 13213575 (C.D. Cal. Dec. 19, 2011) .............................................33, 37

*Patagonia, Inc. v. Tradition LLC*,
    2019 WL 1059687 (C.D. Cal. Mar. 4, 2019) .......................................................41

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ..............................................................................27

*Peer Int'l Corp. v. Pausa Recs., Inc.*,
    909 F.2d 1332 (9th Cir. 1990) ..............................................................................37

AMAZON'S MOTION FOR DEFAULT JUDGMENT - iv
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

*PepsiCo Inc. v. Cal. Sec. Cans*,
  238 F. Supp. 2d 1172 (C.D. Cal. 2002) ........................................................................28, 32

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,
  219 F.R.D. 494 (C.D. Cal. 2003) ......................................................................33, 37, 38

*Philip Morris USA Inc. v. Liu*,
  489 F. Supp. 2d 1119 (C.D. Cal. 2007) ..........................................................................37

*Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co., Ltd.*,
  2019 WL 1572675 (W.D. Wash. Apr. 11, 2019*)* ...........................................................41

*Pom Wonderful LLC v. Hubbard*,
  775 F.3d 1118 (9th Cir. 2014) .......................................................................................29

*POW Nev., LLC v. Connery*,
  2018 WL 3956129 (W.D. Wash. Aug. 17, 2018) ............................................................28

*Reno Air Racing Ass'n v. McCord*,
  452 F.3d 1126 (9th Cir. 2006) .......................................................................................29

*Rolex Watch U.S.A., Inc., v. Watch Empire LLC*,
  2015 WL 9690322 (C.D. Cal. Sep. 29, 2015) .......................................................32, 33, 37, 42

*Spy Optic, Inc. v. Alibaba.com, Inc.*
  163 F. Supp. 3d 755 (C.D. Cal. 2015) .............................................................................31

*Twitch Interactive, Inc. v. Johnston*,
  2019 WL 3387977 (N.D. Cal. July 26, 2019) ................................................................35

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
  2021 WL 254448 (N.D. Cal. Jan. 26, 2021) ...................................................................40

*Warner Bros. Home Ent. Inc. v. Jimenez*,
  2013 WL 3397672 (C.D. Cal. July 8, 2013) ...................................................................41

*Wecosign, Inc. v. IFG Holdings, Inc.*,
  845 F. Supp. 2d 1072 (C.D. Cal. 2012) ..........................................................................42

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) .......................................................................................27

*Wimo Labs, LLC v. eBay, Inc.*,
  2017 WL 10439835 (C.D. Cal. Aug. 3, 2017) ..........................................................33, 37

**Federal Statutes**

15 U.S.C. § 1057(b) ..................................................................................................................4

15 U.S.C. § 1065 .......................................................................................................................3

15 U.S.C. § 1114 ...............................................................................................................29, 30

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

15 U.S.C. § 1116(a) .................................................................................................39, 40

15 U.S.C. § 1117(c) ..........................................................................................................35

15 U.S.C. § 1117(c)(2) .....................................................................................................32

15 U.S.C. § 1117(d) ..........................................................................................................35

15 U.S.C. § 1121 ...............................................................................................................26

15 U.S.C. § 1125 ...............................................................................................................30

15 U.S.C. § 1125(d) ..........................................................................................................35

28 U.S.C. § 1331 ...............................................................................................................26

28 U.S.C. § 1338(a) ..........................................................................................................26

**Rules**

Federal Rule of Civil Procedure 4(k)(2) .....................................................................26, 27

Federal Rule of Civil Procedure 55 ..................................................................................26

Federal Rule of Civil Procedure 55(b)(2) ...........................................................................1

Local Civil Rule 55 ...........................................................................................................26

Local Civil Rule 55(b) ....................................................................................................1, 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

## I.     INTRODUCTION

Quatic Software Solutions Pvt. Ltd. ("Quatic Software") perpetrated a widespread, international tech support fraud scheme that swindled unwitting consumers out of millions of dollars and violated Plaintiff Amazon.com, Inc.'s ("Amazon") federal trademark rights.  Quatic Software operated multiple websites and mobile applications to falsely offer services to help consumers connect Amazon devices with Alexa, and to simultaneously divert consumers from Amazon's genuine website and Alexa app.  Quatic Software deceived its victims into believing technical problems existed with their Alexa-compatible devices, when no such problems existed, and then sold those victims "services" in order to "fix" the non-existent problems.

Quatic Software failed to obtain counsel and the Court entered a default order on October 1, 2021.  Under Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55(b), Amazon now moves the Court for default judgment against Quatic Software for infringing five Amazon trademarks in furtherance of its fraudulent scheme.  Amazon seeks $1 million in statutory damages for each trademark—for a total judgment of $5 million, and $50,000 in statutory damages for the cybersquatting violation, for a total damages award of $5,050,000.[1]  Finally, Amazon seeks entry of a permanent injunction based on Quatic Software's willful infringement of Amazon's trademarks, the likelihood of continued abuse of Amazon's brand, and the harm Quatic inflicted on thousands of victims throughout the United States.

## II.     FACTUAL BACKGROUND

### A.     Amazon Alexa, Echo Devices & Technical Support

One of Amazon's popular products is its voice AI called Alexa, which allows users to utilize a wide array of services using only their voice, including playing music, making phone calls, and delivering the news.  Amazon's Amended Complaint, Dkt. #81 ("Am. Compl.") ¶ 16. Alexa is built into numerous devices offered by Amazon and by many third parties.  *Id.* ¶ 17.

---

[1] The revenue from this scheme exceeded $2,000,000, but Amazon is only seeking to recover statutory damages in this Motion.

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 1
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

Many of these products are smart home devices, such as lights, thermostats, door locks, and appliances. *Id.* Among other things, Alexa allows users to control these smart home devices either through voice control or through other Alexa-enabled devices. *Id.*

Echo, and its smaller sibling, Echo Dot, are popular smart speakers made by Amazon that come with Alexa. Am. Compl. ¶ 18. The speakers allow users to interact with Alexa and control other Alexa-compatible devices. *Id.* Echo and Echo Dot come with instructions on how to activate the product and begin using its features. *Id.* ¶ 19. Generally, users must download the Amazon Alexa app for iOS and Android devices. *Id.* The Amazon Alexa app is developed by Amazon and is available to download for free. *Id.* Once downloaded, the Amazon Alexa app guides users through the setup process. *Id.* There is no fee to activate an Echo or Echo Dot, and no paid subscription is required. *Id.*

Amazon offers robust customer support for Echo and Echo Dot users—free of charge. Am. Compl. ¶ 20. Amazon's website contains instructions, troubleshooting pages, video tutorials, and answers to common questions. *Id.* Should a user require additional support, they may contact Amazon customer service by phone or through online chat (among other methods). *Id.*

## B.     Amazon Is a Trusted Brand

Amazon is a highly trusted brand that is inextricably linked with online sales and services. Am. Compl. ¶¶ 1, 21. Amazon exclusively owns numerous U.S. trademark registrations and pending applications. *Id.* ¶ 21. These trademarks are a critical component of consumers' ability to readily identify Amazon products and services. *Id.* Relevant to this case, these trademarks and service marks include the following marks (collectively "Amazon Trademarks"):

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 2
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

| Mark | Registration No. (International Classes) |
|---|---|
| **amazon** | 4,171,965 (Int. Cl. 9) <br> 5,038,752 (Int. Cl. 25) |
| AMAZON | 2,657,226 (Int. Cl. 42) <br> 2,738,837 (Int. Cl. 38) <br> 2,738,838 (Int. Cl. 39) <br> 2,832,943 (Int. Cl. 35) <br> 2,857,590 (Int. Cl. 9) <br> 3,868,195 (Int. Cl. 45) <br> 4,171,964 (Int. Cl. 9) <br> 4,533,716 (Int. Cl. 2) <br> 4,656,529 (Int. Cl. 18) <br> 4,907,371 (Int. Cls. 35, 41, 42) <br> 5,102,687 (Int. Cl. 18) <br> 5,281,455 (Int. Cl. 36) |
| ALEXA | 5,563,417 (Int. Cls. 9, 35, 36, 39, 41, 42, 43, 44, 45) <br> 5,880,382 (Int. Cls. 9, 37, 41, 42) <br> 2,181,470 (Int. Cl. 42) <br> 2,189,928 (Int. Cl. 9) |
| ECHO | 5,470,187 (Int. Cls. 9, 42) <br> 5,469,992 (Int. Cls. 9, 38, 41, 42) |
|  | 5,413,055 (Int. Cls. 35, 36, 39, 41, 43, 44, 45) <br> 5,682,947 (Int. Cls. 9, 42) |

*Id.* ¶ 22; Declaration of Melina Garcia ("Garcia Decl.") ¶ 2, Exs. A-V.[2]  The Amazon

Trademarks have been used exclusively and continuously by Amazon, and have never been

abandoned.  Am. Compl. ¶ 23.  The above U.S. registrations for the Amazon Trademarks are

valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C.

§1065.  *Id.*  The registrations for the Amazon Trademarks constitute prima facie evidence of

---

[2] Quatic Software infringed at least seven Amazon Trademarks.  *See* Am. Compl. ¶ 22. Amazon only seeks statutory damages in this Motion for five of those marks.

Davis Wright Tremaine LLP <br> LAW OFFICES <br> 920 Fifth Avenue, Suite 3300 <br> Seattle, WA 98104 <br> 206.622.3150 main · 206.757.7700 fax

their validity and of Amazon's exclusive right to use the Amazon Trademarks pursuant to 15 U.S.C. § 1057(b). *Id.*

### C.    Quatic Software's Fraudulent Scheme

#### 1.    Tech Support Scams

Tech support scams victimize hundreds of thousands of people every year. Am. Compl. ¶ 24. Traditionally, tech support schemes have focused on vulnerabilities in a computer's operating system or other software as the material misrepresentations made to victims in order to sell fraudulent services. *Id.* ¶ 27. Given the rise of connected devices beyond traditional computers—such as Alexa-compatible devices—bad actors now target potential victims seeking assistance with these devices. *Id.* ¶ 28. Bad actors target victims through a variety of means, including online advertisements that render pop-ups, paid search results, websites, and mobile applications. *Id.* ¶ 25. The purpose of each method is to prompt victims to call a toll-free number that connects them to the bad actors. *Id.* Once connected, the bad actors typically gain remote access to victims' computers. *Id.* ¶ 26. With the remote access, the bad actors deceive victims into believing their devices have dangerous technical issues, such as being infected with malicious viruses, in order to sell unneeded services to solve the nonexistent issues. *Id.* As explained below, Quatic Software's misconduct follows this general pattern.

#### 2.    The Players in Quatic Software's Tech Support Scheme

Quatic Software controls the tech support scheme that is the subject of this lawsuit. Quatic Software is an Indian company based in India. *Id.* ¶ 9. It operates a call center of less than 10 employees, and is owned by four individuals, two of which are India-based co-defendants, Hitesh Kumar Sachdeva ("Kumar") and Gureen Pawar ("Pawar"). *Id.* ¶ 32. Quatic Software partnered with a U.S.-based company, co-defendant Robojap Technologies, LLC ("Robojap"), whose sole member and employee is U.S.-based co-defendant Sandeep Singh ("Singh"). *Id.* ¶ 33.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

Quatic Software and Robojap entered into an agreement in which Quatic Software would provide India-based technicians to provide customer assistance, and Robojap would provide the necessary U.S.-based infrastructure, including a corporate entity and bank accounts, to conduct this business.  *Id.* ¶ 34.  Pursuant to the agreement, customers paid Robojap for the technical support services, after which Pawar sent invoices to Robojap instructing Robojap to send 80% of the profits from the sales to Quatic Software.  *Id.* ¶ 35.  Robojap sent payments to Quatic Software's bank account at Indus Bank for the sale of technical support services, including services related to Amazon devices.  *Id.* ¶ 36.

### 3. Quatic Software Targets Victims Seeking Help with Amazon Alexa Devices

Quatic Software used both websites and mobile applications to deceive victims into contacting its call centers.  Am. Compl. ¶ 40.  Among other tactics, Quatic Software used the Amazon Trademarks and false statements about its affiliation with Amazon.  *Id.*  Quatic Software also used a phony download process to trick people into believing an issue exists with the Alexa app—when no issue existed.  *Id.*

### a. Quatic Software Used Websites to Target Victims

Quatic Software's directors, Pawar and Kumar, hired a developer and arranged for him to design certain websites.  Pawar registered the domain for the websites on Quatic Software's account at Namecheap.  *Id.* ¶ 43; Garcia Decl. ¶ 3, Exhibit W, Deposition Testimony of Hitesh Kumar ("Kumar Dep.") at 129:1-130:15, 130:16-18,168:4-7, 189:5-8, 191:3-5, 198:15-17, 201:13-16, 204:2-4.[3]  The domains on Quatic Software's Namecheap account, among others, include hometosmarthome.com, smarkskillapp.com, smartspeakerapp.com,  rindoorbell.com, smartspeakersetup.com, getalexaskill.com, echoshowalexa.com, alexaechoguide.com, echoskillalexa.com, downloadalexaapp.com, and downloadalexaapp.net,

---

[3] Quatic Software designated both Kumar and Pawar as representatives for its 30(b)(6) deposition.  Though citing to the "Kumar Dep." and "Pawar Dep." for clarity, both depositions were technically of Quatic Software.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

1 | hometosmarthome.com, smartspeakerskills.net, smartvoicedevices.com,

2 | thesmartspeakerapp.com, thesmartspeakersetup.com, smartskillapp.com,

3 | smartspeakerskills.net, and techfixo.com (collectively, the "Websites"). Am. Compl. ¶¶ 42-47;

4 | Garcia Decl. ¶ 3, Exhibit X (showing Namecheap account registered domains); *see also* Kumar

5 | Dep. at 129:1-130:18, 168:4-7, 189:5-8, 191:3-5, 198:15-17, 201:13-16, 204:2-4 (confirming

6 | he and other Quatic Software employee working at his direction registered domains to Quatic

7 | Software's Namecheap account). Quatic Software's account at Namecheap also hosts Quatic

8 | Software's website quaticsoft.com, and Robojap's website, robojaptechnologies.com. Garcia

9 | Decl., Exhibit X. Quatic Software's phone numbers were advertised on the infringing

10 | Websites, which led visitors to call Quatic Software's call center. Kumar Dep. at 182:6-22.

11 | Several of the domains Quatic Software registered and used contain the Amazon

12 | Trademarks. Specifically, Quatic Software's Namecheap account includes a core domain that

13 | uses the Amazon Trademarks (echoalexaskill.com), and three subdomains that use the Amazon

14 | Trademarks (echoalexa.techfixo.com, echoshow.techfixo.com, alexa-

15 | app.cloudtechnologiesllc.us) in the names themselves. Am. Compl. ¶ 47. Screenshots of the

16 | homepages of echoalexaskill.com, echoalexa.techfixo.com, and echoshow.techfixo.com are

17 | attached as Exhibits A – C to the Amended Complaint.

18 | The Website echoalexa.techfixo.com uses Amazon's brand to advertise tech support

19 | services targeting Alexa users. Am. Compl. ¶ 48. A screenshot of the website is below:

20



21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1    The Website echoshow.techfixo.com also uses Amazon's brand to advertise tech

2    support services targeting Alexa users.  Am. Compl. ¶ 49.  A screenshot of the website is

3    below:



11   *Id.*

12            **b.    Quatic Software Used Apps to Target Victims**

13           In addition to the Websites Quatic Software operates, it also designs and distributes

14   mobile apps that use Amazon's brand to deceive victims attempting to activate Echo devices

15   (collectively, the "Apps").  Am. Compl. ¶ 52.  Kumar approved of the development of each of

16   Quatic Software's Apps.  *Id.*

17           Quatic Software distributes multiple Apps on the Google Play store using the developer

18   names "Smart Home Services," "Smart Home Expert," and "Home to Smart Home." *Id*. ¶ 53;

19   Garcia Decl. ¶ 5, Exhibit Y (showing Google production identifying Quatic Software's Google

20   Play store accounts); *see also* Pawar Dep. at 88:17-91:4.

21           Through its "Smart Home Services" account with Google, Quatic Software distributed

22   the Apps "Setup Guide for Smart Speaker" and "Echo Dot App."  Garcia Decl. ¶ 5, Exhibit Y.

23   The "Setup Guide for Smart Speaker" App was public since July 16, 2019, and had 5,754

24   installations.  *Id.*  Partial screenshots of these Apps are below:

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax



On September 7, 2019, Google Play sent an email to appleads304@gmail.com, the email address linked to the "Smart Home Services" account which Kumar had access to.  Garcia Decl. ¶ 6, Exhibit Z (showing email from Google Play); *see also* Kumar Dep. at 119:5-21.  The email notified Quatic Software that an app it developed, "Alexa App for Echo," was removed due to a policy violation in that the app used "another app or entity's brand, title, logo, or name in a manner that may result in misleading users."  Garcia Decl. ¶ 6, Exhibit Z.  Quatic Software received three or four additional notifications like this from Google, and in order to evade these removals, Kumar would change the name of the Apps.  Kumar Dep. at 120:15-24, 122:14-19.

Through its "Smart Home Expert" account with Google, Quatic Software distributed the Apps "Alexus App Setup & Guide,"[4] "Setup Guide for Echo," "Ring App for Video Doorbell," and "Echo Setup Instructions & Guide."  Am. Compl. ¶ 54; Garcia Decl. ¶ 5, Exhibit Y.  The "Setup Guide for Echoer" App was public since April 4, 2019, and had 39,979 installations.  *Id.*  The "Echo Setup Instructions & Guide" App was public since May 18, 2019, and had 2,963 installations.  *Id.*  Partial screenshots of these Apps are below:

---

[4] Kumar approved of the development of the "Alexus App Setup & Guide" App and to ensure the App was not rejected by Google, Kumar approved of changing the name from "Alexa" to "Alexus."  Kumar Dep. at 113:1-23, 114:25-115:9.

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 8
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax



Through its "Home to Smart Home" account with Google, Quatic Software distributed the app "Setup Guide for Echo."  The "Setup Guide for Echo" app was public since May 22, 2019, and had 41,235 installations.  *Id.*  A screenshot of this application is below:



AMAZON'S MOTION FOR DEFAULT JUDGMENT - 9
(2:20-CV-694-MJP)

In the description for the "Setup Guide for Echo," Quatic Software states: "Download the Smart Speaker Setup now on your Android or iOS phone to setup Alexa-enabled devices like Echo, Echo Plus, Echo Dot, Echo Spot, Echo Sub, Echo Show, Echo Input, and Tap."  Am. Compl. ¶ 55.

### c.   Quatic Software Advertised the Websites and Apps to Victims in the U.S.

To garner traffic to the Websites and Apps (and then Quatic Software's call-center), Kumar and Pawar approved of and arranged for Quatic Software to engage the services of Google AdWords.  *Id*. ¶ 61; *see also* Garcia Decl. ¶ 7 Exhibit AA, Deposition Testimony of Gureen Pawar ("Pawar Dep.") at 74:19-75:4.  The keywords used on Google AdWords were intended to target U.S. and Canadian consumers searching for help setting up their Alexa.  The keywords Quatic Software purchased to direct consumers to their fake apps and websites included the terms "download Alexa app," "download Echo app," and "download echo dot app."  Am. Compl. ¶ 62.

Pawar approved of the decision to purchase Google AdWords, because "Google is the . . . biggest traffic generator" and would ultimately lead to more revenue.  Pawar Dep. at 75:15-76:5.  Pawar made the decision to purchase United States phone numbers to generate traffic for Robojap's website.  *Id.* at 105:9-11.

### d.   The Websites and Apps Falsely Tell Victims an Error Occurred with their Alexa Device

The purpose of Quatic Software's Websites and Apps was to cause victims to contact its call center and sell victims unnecessary services.  Am. Compl. ¶ 63.  Quatic Software falsely represents to victims that it offers the genuine Amazon Alexa app, using Amazon's Trademarks to further the deception, then falsely informs victims that an error prevented them from downloading the Alexa app.  *Id*. ¶¶ 63-71.  When users click on the "Download Alexa App" on

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 10
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

the Websites or otherwise try to connect their devices on the Apps, they are presented with an error code. *Id.*

 For example, Quatic Software's Apps "Setup Guide for Echo" and "Guide to setup echo" both purportedly assist victims with setting up their Alexa devices. *Id.* ¶ 65. However, when victims attempt to use the apps to setup their devices, they are presented with an error code. *Id.* Partial screenshots of the error message from both apps are below:

**Setup Guide for Echo**    **Guide to setup echo**

 

 Quatic has admitted that these Apps do not have the functionality to setup an Alexa device. Pawar Dep. at 175:7-10 (Question: "That download link was just showing an animation that made it look like it was downloading the Alexa app, right?" Answer: "Right."); *see also id.* at 205:5-11 (Question: "Did any of Quatic's websites actually install the Alexa app on users' devices?" Answer: "No sir. There is no such website."); *see also* Kumar Dep. at 49:17-50:16 (Question: "I just want to know that by the time you had this discussion in April, you knew that -- whoever's plan it was -- the plan was to develop apps that presented an error message that was fake and that had a phone number directing users to call Quatic." Answer: "The model was to generate the traffic, so I would say yes."); *see also id.* at 223:24-224:2

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 11
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

(Question: "And the app did not actually have the capability to locate an Amazon device or to download any Amazon software; correct?" Answer: "Correct.").

Although the App states it is "find[ing] your device," the Apps are not "finding" Alexa devices.  Am. Compl. ¶ 66.  The error code will always display as it results from an animation Quatic Software uses in the app.  *Id.*  Quatic Software designed the Apps to show this message each time a victim attempts to use them.  *Id.*

Quatic Software's Websites use a similar tactic to deceive users into contacting its call center.  *Id.* ¶ 67.  For example, Quatic Software operates the Websites echoalexa.techfixo.com and echoshow.techfixo.com which contain a link where victims can purportedly download the "Alexa App," as shown in the following screenshots:

**echoalexa.techfixo.com**



**echoshow.techfixo.com**



*Id.* ¶ 67.

On the Website echoshow.techfixo.com, Quatic Software refers to itself as the "Amazon Alexa App support team" and claim victims can download the "Alexa app."  *Id.*  As another example, below is a partial screenshot from the page victims see when they click "Download Alexa App" on echoalexa.techfixo.com, including a header stating "Steps to download Amazon Alexa app":

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 12
(2:20-CV-694-MJP)

1
2
3
4
5
6
7
8



*Id.* ¶ 68.

9
10
11
12
13

When a victim attempts to download the "Alexa app" from Quatic Software's Websites, vicitms see an animation on the website that is designed to appear like the app is downloading. No actual download occurs. *Id.* ¶ 69. Instead, after a few seconds, the animation results in an error message similar to the ones presented through Quatic Software's Apps. *Id.* Partial screenshots of these error messages are below:

14
15
16
17

**echoalexa.techfixo.com**



18
19
20

**echoshow.techfixo.com**

21
22
23
24



25
26
27

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 13
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

Pawar and Kumar **knew** that the Websites and Applications (which used Amazon's Trademarks) purported to—but did not—install Amazon's Alexa software, yet they approved of the websites and apps because they generated revenue for Quatic.  Pawar Dep. at 124:7-20; Kumar Dep. at 49:1-16.  They each personally approved of the scheme, despite having the authority to stop it.  Pawar Dep. at 189:21-190:21; Kumar Dep. at 136:6-12 (removing domains).

Quatic Software's misrepresentations on the Websites and Apps are particularly harmful because they are designed to appear like Amazon's genuine setup process for Alexa devices.  Am. Compl. ¶ 71.  To setup a device, users download Amazon's Alexa app, and follow the setup instructions.  Quatic Software created the deceiving Websites and Apps, and then specifically targets victims by diverting them from Amazon's genuine app to websites and apps from which victims cannot actually install Alexa devices.  *Id*.  Flagrantly, it did so by purchasing Googe Adword keywords specifically targeting those victims looking for assistance in setting up their Alexa devices, including the keywords "download Alexa app," "download Echo app," and "download echo dot app."  *Id*. ¶ 62.

### 4. Quatic Software's Sale of Fraudulent Tech Support Services

The purpose of Quatic Software's Websites and Apps is to deceive victims into calling its toll-free number.  *Id*. ¶ 72.  Once victims call the number, Quatic Software continues to falsely claim that there is an issue with the victims' Alexa device, and attempts to sell victims unnecessary services.  *Id*.  An investigator working for Amazon contacted Quatic Software and was twice sold unnecessary services after being falsely told issues existed with his Echo Dot. *Id*.  Despite Quatic Software's extensive use of the Amazon Trademarks and false or misleading statements about its connection to Amazon, Quatic Software's services do not originate with, are not sponsored or approved by, and are not otherwise affiliated with, Amazon.  *Id*.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

### a.   First Test Purchase[5]

On December 10, 2019, an investigator initiated an online chat on robojaptechnologies.com, the Website hosted on Quatic Software's Namecheap account and managed by Kumar.  *Id.* ¶ 73.  The investigator requested help with his Echo Dot, and told Quatic Software it was simply "not working."  *Id.*  One of Quatic Software's agents responded by directing the investigator to a remote access service via fastsupport.gotoassist.com/811201526.  *Id.* ¶ 74.  The technician used the name "Victor Jones" to connect to the investigator's computer.  *Id.*  The technician asked for the investigator's name and number, and then called the investigator from 888-440-5666.  *Id.* ¶ 75.  This phone number was owned and managed by Quatic Software.  Kumar Dep. at 73:9-18.  On the phone call, the technician instructed the investigator to connect the Alexa Dot to a power outlet.  Am. Compl. ¶ 75.  The technician then said, "I am going to download Alexa app onto your computer in order to set it up."  *Id.*  The technician navigated to the Website smartdotsupport.com/alexa-app-windows/.  *Id.* ¶ 76.  This Website is hosted through Quatic Software's account at Namecheap (which hosts websites like robojaptechnologies.com).  *Id.*; *see also* Garcia Decl. ¶ 4, Exhibit X.  Kumar approved of the development of the website, and the idea to use the term "Alexa App" on the website.  Am. Compl. ¶ 76.  Below is a partial screenshot of the website's homepage:

---

[5] Both test purchases were conducted by an outside investigator for Davis Wright Tremaine and are detailed in a signed declaration filed previously in this case. *See* Dkt. # 40, Declaration of Wesley Brandi.  The declaration independently verifies, and mirrors, the allegations in the Amended Complaint.  For clarity, only the Amended Complaint is cited.

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 15
(2:20-CV-694-MJP)



The technician clicked on the Windows download button, which caused a window to pop-up that purportedly indicated a download was in progress. *Id.* ¶ 77. A screenshot of this download image is below:



The Website does not download anything. *Id.* ¶ 78. The screen just presents an animation to deceive the victim into believing the Alexa app is downloading. *Id.* After a few seconds, the animation ends in an error message, a screenshot of which is below:

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9



10   After presenting the investigator with the phony error message above, the technician

11 represented there was a security problem with the computer.  *Id.* ¶ 80.  The technician opened

12 the command function, and prompted a simple directory search.  *Id.*  The perpetrator stated this

13 task would identify the problem.  *Id.*  At the conclusion of the search, the perpetrator wrote at

14 the bottom of the dialogue box:  "Foreign Address Detected . . . IP is not secure . . . Unable to

15 connect Alexa."  *Id.*  A screenshot of this message is below:

16

17
18
19
20

21   Quatic Software's representations were false.  *Id.* ¶ 81.  The command function it used

22 could not identify any problem with the investigator's Alexa device.  *Id.*  Further, no issues

23 existed with the investigator's Alexa device, and no issue prevented the device from being

24 connected.  *Id*; *see also* Pawar Dep. at 196:5-14 ("Question: Yeah. Are you aware of any

25 command prompt command that would diagnose a problem with the customer's Alexa device?

26 Answer: Not directly. Question: Are you aware of any command prompt command that would

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

generate the response shown in the screenshot in Paragraph 72 [of the Complaint] that says 'Foreign address detected. IP is not secure. Unable to connect Alexa'? Answer: No.").

After telling the investigator there was an issue with his device, the technician offered to sell the investigator a protection plan that would solve the issue. Am. Compl. ¶ 82. When the investigator hesitated to purchase the services, the technician disconnected the call. *Id.* Ten minutes later, the investigator called the technician back at 888-440-5666. *Id.* ¶ 83. A different technician answered and identified himself as "Max." The investigator stated that Victor had offered services for $150, and he wanted to purchase them. *Id.*

The technician reconnected to the investigator's computer through LogMeIn. *Id.* ¶ 84. After connecting, the technician navigated to quickclick.com to process the payment for the transaction. *Id.* The investigator provided his payment information to Quatic Software in order to purchase services for $150 that were supposed to protect his devices and solve the Alexa-device issue identified by the technician. *Id.* ¶ 85. Network Merchants Inc., ("NMI") a U.S.-based payment processor, processed the payment and all the other payments for Quatic Software's services which were paid to Robojap. Garcia Decl. at ¶ 8, Exhibit AB (showing Robojap account with NMI and payments processed for both test purchases). The NMI account was set up by Singh and Robojap, and once payments were received, 80% of net proceeds were paid to Quatic Software. *See* Garcia Decl. at ¶ 9, Exhibit AC: Deposition Testimony of Sandeep Singh ("Singh Dep.") at 73:3-18; 80:1-5.

The investigator received a confirmation email from support@robojaptechnologies.com. Am. Compl. ¶ 86. The receipt listed the merchant as Robojap Technologies, LLC. *Id.* After the purchase was completed, the payment website (quickclick.com) redirected to the website smarthomes.support. *Id.* ¶ 87. This website stated: "Thank you for subscribing services with Robojap Technologies, LLC." *Id.* A partial screenshot of this website is below:

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 18
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax



Smarthomes.support is hosted through Quatic Software's account at Namecheap. *Id.* ¶ 88; *see also* Garcia Decl. Exhibit X (showing domains registered on Quatic Software's Namecheap account). The technician then helped the investigator execute an agreement with Robojap. Am. Compl. ¶ 90. (Robojap and Quatic Software agreed that Quatic Software would enter into agreements with customers on Robojap Technologies' behalf. Singh Dep. at 184:9-18.) First, the technician created a Gmail account for the investigator. Am. Compl. ¶ 89. Second, the technician transferred the investigator back to Victor by going to another remote access link at fastsupport.gotoassist.com/598865832. *Id.* The technician then disconnected the call. *Id.* A few minutes later, the investigator received a call from 866-269-9419, from a different person who identified himself as "Victor" of "the support team." *Id.*

The technician then opened an email from Docusign (a U.S. company) that contained a contract with the perpetrators. *Id.* ¶ 90. Kumar set up the Docusign account for Quatic Software to sign agreements with customers. Kumar Dep. at 84:1-4. The subject of the email was "Please Docusign: $ contract for Robojap technologies llc.docx." Am. Compl. ¶ 90. The Docusign agreement used the email address agreemntsofcloudtechnologies@gmail.com. *Id.* The technician scrolled through the agreement, entered values, and signed for the investigator. The investigator received the completed agreement via email. *Id.* The title of the agreement is "Robojap Technologies LLC, User Service Agreement." *Id.* Kumar and Pawar set up the

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 19
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1   email address agreemntsofcloudtechnologies@gmail.com on behalf of Quatic Software to

2   monitor the agreements on the DocuSign account.  *See* Kumar Dep. at 191:9-23.

### b.     Second Test Purchase

4         On December 16, 2019, the investigator called Robojap at 877-781-3080, the number

5   listed on Robojap's website.  Am. Compl. ¶ 94.  Quatic Software's agent, a person who later

6   identified himself as "Harold," answered the call.  *Id*.  The investigator asked for help setting

7   up an Amazon Alexa device.  *Id*.  The technician requested remote access to the investigator's

8   computer through LogMeIn.  *Id*. ¶ 95.  (To allow Quatic employees to remotely connect to

9   customers' computer, Kumar had opened an account with LogMeIn and managed the services

10   LogMeIn provided.  Kumar Dep. at 85:11-15.  Once the technician gained access, he took the

11   investigator to the same website as in the first test purchase, smartdotsupport.com.  Am.

12   Compl. ¶ 96.  The technician walked the investigator through the same exercise as the first

13   purchase, including attempting to "download" the Alexa app through the website.  *Id*. ¶ 97.  As

14   with the first test purchase, no actual program downloaded.  *Id*.  The screen shown to the

15   investigator was merely an animation to deceive victims into believing the technician is

16   attempting a download.  *Id*.

17         After a few seconds, the website stated that there was an error in the download process,

18   a partial screenshot of which is below:



AMAZON'S MOTION FOR DEFAULT JUDGMENT - 20
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

*Id.* ¶ 98.  With this error message on the screen, the technician told the investigator that the computer lacked the proper "protections," and that "bad things" were happening on the investigator's device.  *Id.* ¶ 99.

The technician opened a program on the investigator's computer called Notepad and wrote:  "Alexa failed to download," the investigator had "unsecure devices," and the investigator's "[n]etwork access protection is out of date please install and renew."  *Id.* ¶ 100. These statements are false.  *Id.*  A screenshot of this message is below:



The technician offered to sell the investigator certain "lifetime" services for $150 to fix these issues.  *Id.* ¶ 101.  A screenshot of this offer, as written by the technician, is below:



During the purchase, the technician provided a contact phone number of 866-269-9419 for the investigator to call back.  *Id.* ¶ 102.  This was the same number Quatic Software used in the first test purchase.  *Id.*  When the investigator agreed to purchase the services, the technician took the investigator to quickclick.com to complete the transaction—the same website used in the first test purchase.  *Id.* ¶ 103.  The first attempt at charging the card failed. *Id.*  The perpetrator hung up while the investigator "called the bank," but then called back from

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 21
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

888-440-5666—a number also used in the first test puchase.  *Id*.  Quatic Software again tried to run the investigator's payment card, but it did not go through.  *Id*.

### 5.      The Financial Consequences of the Scheme.

Quatic Software used Robojap and Singh to funnel money through a U.S.-based payment processor and bank account.  When Pawar approached Singh about Quatic Software and Robojap working together, he told Singh that Quatic Software, as an Indian company, could not engage a payment processor in the U.S. to accept payments from technical support customers.  *Id*. ¶ 34; Pawar Dep. at 109:8-20.  Robojap engaged NMI to process payments and set up a Wells Fargo corporate bank account to transfer funds to Quatic Software ("Robojap Bank Account").  Singh Dep. at 86:11-21.  Quatic Software had a corporate account at IndusInd Bank ("Quatic Bank Account").  Pawar Dep. at 301:25-302:5.

NMI processed over 36,000 payments for Robojap, and transferred funds to the Robojap Bank Account.  Garcia Decl. Ex. AB.  Each month after business expenses were paid, Singh would transfer 80% of the month's profits to the Quatic Bank Account.  *Id*. at 314:12-24; 303:13-305:4.  The only funds Robojap received were funds derived from consumer purchases of Quatic Software's services.  Singh Dep. at 150:15-18.

In 2018, when the first of the Websites were registered, Robojap's gross income from the sale of technical support services was about $1 million, and according to the agreement between the parties, about $800,000 (80%) was wired to Quatic Software.  Singh Dep. at 149:2-13.  For the 2019 tax year, Robojap reported a gross income of $1,018,206.  Garcia Decl. ¶ 10, Exhibit AD (showing Robojap's 2019 tax return).  Robojap claimed deductions in the amount of $719,056 for "Contract labor."  *Id*.  These "Contract Labor" payments were what Robojap paid to Quatic Software.  Singh Dep. at 159:16-160:1.  In 2020, Robojap's gross income was between $300,000-400,000, meaning about $280,000 was wired to Quatic Software, according to the parties' contractual agreement.  *Id*. at 150:1-4.  Between 2018, when the first of the Websites were registered, and 2020, when Amazon filed this lawsuit and Singh

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 22
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

claims to have asked Quatic to stop offering services related to Amazon devices, Quatic

Software received over $1,799,056 in profit from Robojap.[6]

In addition to the financial consequences of Quatic Software's scheme, there was also

unquantifiable substantial customer harm.  For example, one victim made a report on the

company profile page for Robojap on the Better Business Bureau on February 3, 2020 noting

that they contacted Robojap for help activating their Alexa device.  *See* Declaration of Niles

Gooding ("Gooding Decl."), Dkt. #38, ¶15.

Thinking the company was associated with Amazon, the victim reported purchasing services to

activate their Alexa.  *Id*.  A screenshot of this complaint is provided below:



Another victim made a report on July 29, 2020 noting that they downloaded an application they

thought was associated with Amazon.  *Id.* ¶16.  A screenshot of this complaint is provided

below:



---

[6] All of Robojap's revenue was derived from Quatic Software's sale of services.  Singh. Dep. at 121:14-17.  Quatic Software has not produced any evidence showing revenue from services other than those related to Amazon devices.  Garcia Decl. at ¶ 11.  In fact, Quatic Software stated that it deleted a spreadsheet that would have contained a description of what services customers purchased.  Pawar Dep. at 110:23-111:11.

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 23
(2:20-CV-694-MJP)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### III.   ARGUMENT

The Court has the authority to enter a default judgment based on the Court's Order of Default, Federal Rule of Civil Procedure 55 and Local Civil Rule 55.  Fed. R. Civ. P. 55; LCR 55.  After the Clerk enters a default, the defendant's liability is established, and the well-pleaded factual allegations of the complaint are accepted as true.  *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  In considering whether to enter a default judgment, a Court assesses the seven factors outlined in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In this case, the Clerk has entered default against Quatic Software, and the *Eitel* factors weigh heavily in favor of entering a default judgment against it.

### A.   The Court Has Jurisdiction to Enter Default Judgment

Prior to entering a default judgment, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citation omitted).  Here, the Court has subject matter jurisdiction over Amazon's claims and personal jurisdiction over Quatic Software.

**First**, the Court has subject matter jurisdiction over Amazon's Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

**Second**, Quatic Software's extensive contacts with the United States subject it to this Court's jurisdiction and allows it to be held accountable for the harm it caused victims in the United States (and Washington).  Moreover, Quatic Software, which previously accepted service of the original Complaint and appeared in this case without objection, was properly served with process of the Amended Complaint and failed to object on jurisdictional grounds.  Dkt. #81.

Federal Rule of Civil Procedure 4(k)(2) serves as the federal long-arm statute for federal claims against foreign nationals.  A court may exercise personal jurisdiction over a foreign defendant pursuant to Rule 4(k)(2) when: (1) the claim arises under federal law; (2) the defendant is not subject to general jurisdiction in any state; and (3) the exercise of personal

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

jurisdiction is consistent with due process.  *See* Fed. R. Civ. P. 4(k)(2); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)).  The third element is satisfied when a defendant has "minimum contacts" with the United States.  *See Holland*, 485 F.3d at 462; *Pebble Beach*, 453 F.3d at 1158-59 ("This ability to look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum is a product of Rule 4(k)(2).").  Apart from the relevant forum, the due process analysis under Rule 4(k)(2) is "identical" to the due process analysis under Washington's long-arm statute.  *See Pebble Beach*, 453 F.3d at 1159; *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994) (Washington's long-arm statute imposes "no limitations beyond those imposed by due process") (citation omitted).

Here, all requirements are met.  Amazon's claims against Quatic Software arise under the Lanham Act, *see* Am. Compl. ¶¶ 104-135.  Quatic Software is not subject to general jurisdiction in any state.  *Id.* ¶ 9; *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (noting that a court can assert general jurisdiction over a corporation [or an individual] only if it is "essentially at home" in the forum state).  And it has "minimum contacts" with the United States.  Quatic Software's directors affirmatively contacted Robojap in Washington, entered into a contract with Washington-based Robojap, induced Robojap's sole manager to set up U.S.-based business infrastructure for Quatic Software's illegal activities, and then perpetrated widespread fraud on U.S.-based consumers.  Am. Compl. ¶¶ 29-41.  Under these circumstances, the Court's exercise of jurisdiction over Quatic Software is reasonable.  *See Pebble Beach*, 453 F.3d at 1155 ("minimum contacts" test is satisfied where: "(1) the defendant has performed some act or consummated some transaction within the forum . . . (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**B.      Amazon Is Entitled to a Default Judgment**

To determine a plaintiff's entitlement to default judgment, courts in the Ninth Circuit consider the seven *Eitel* factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." 782 F.2d at 1471-72.  All seven factors weigh in favor of granting default judgment here.

**1.      First *Eitel* Factor:  Amazon Will Be Prejudiced Without a Default Judgment**

The first factor weighs in Amazon's favor because Amazon will be prejudiced without a default judgment in this case.  Despite previously participating in the case, since Quatic Software's counsel withdrew, Quatic Software has made it clear that it has no intention of participating in this litigation.  *See* Motion for Default (Dkt. #99).  Absent a default judgment, Amazon has no legal remedy for Quatic Software's harm, and no way to prevent Quatic Software from causing further damage to Amazon and its customers.  *See POW Nev., LLC v. Connery*, 2018 WL 3956129, at \*2 (W.D. Wash. Aug. 17, 2018) (finding first *Eitel* factor weighed in favor of default judgment because plaintiff would have no legal remedy without default judgment).

**2.      Second and Third *Eitel* Factors:  Amazon's Well-Pleaded Complaint & Supporting Evidence Establish Quatic Software's Liability Under the Lanham Act**

The second and third factors—"often analyzed together"—support a default judgment. *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014).  Using these factors, the Court must examine whether the plaintiff pleaded facts sufficient to establish and succeed upon the asserted claims.  *See PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

Here, in addition to the well-pleaded allegations in the Complaint, Amazon submits detailed declaration evidence from the investigators charged with uncovering Quatic Software's scheme, as well as direct testimony from Quatic Software's directors, Kumar and Pawar, and Robojap's sole member, Singh, who facilitated the scheme in the United States.  *See* Pawar Dep., Kumar Dep., Singh Dep.

### a.   Amazon's Complaint Establishes Quatic Software's Liability for Trademark Infringement

To establish trademark infringement, a claimant must show: (1) it has a protected ownership interest in the mark; and (2) the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive."  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (internal quotation marks and citation omitted); 15 U.S.C. § 1114.  Amazon has established both elements.

*First*, Amazon owns five trademarks that Quatic Software used in its scheme.  Am, Compl. ¶¶ 22-23.  Amazon has provided the registrations for each of the Amazon Trademarks. Garcia Decl., Exs. A-V.  This uncontested proof of registration conclusively establishes Amazon's protected ownership interest.  *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014).

*Second*, as further alleged in the Amended Complaint, Quatic Software's use of the Amazon Trademarks confused victims as to the origin of the fraudulent customer support services.  *See Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).  The Amazon Trademarks are exceptionally strong and have achieved tremendous trust and recognition. Am. Compl. ¶¶ 16-20.  Quatic Software intentionally used exact copies of the Amazon Trademarks on the Websites and Apps, which were expressly designed and intended to give victims the false impression that they originated with, were affiliated with, or were sponsored by Amazon.  In doing so, Quatic Software successfully enticed over 89,931 victims

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

1  to install its Apps and purchase at least $2,300,000 in unnecessary services.[7]  Garcia Decl.

2  Exhibit AB (showing Robojap account with NMI and payment processed for first test

3  purchase); *Id*. Exhibit Y (showing Google production with App installs).  Cases such as this—

4  where the alleged infringer intentionally used exact copies of strong, distinctive marks and

5  targeted the mark owner's customers—"present[] an easy analysis in terms of likelihood of

6  confusion."  *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076-78 (9th

7  Cir. 2006).

8              **b.    The Allegations in Amazon's Complaint Establish Quatic**
              **Software's Liability for False Designation of Origin and False**
9              **Advertising**

10         A claim for false designation of origin and false advertising arises where the misuse of a

11  trademark confuses or deceives consumers, or where the infringement misrepresents the nature

12  and qualities of the products sold. 15 U.S.C. § 1125.  To prevail on its claims under this

13  provision, Amazon must show that Quatic Software "(1) used in commerce (2) any word, false

14  designation of origin, false or misleading description, or representation of fact, which (3) is

15  likely to cause confusion or misrepresents the characteristics of his or another person's goods

16  or services."  *Freecycle Network, Inc. v. Oey,* 505 F.3d 898, 902-04 (9th Cir. 2007).  Although

17  there are some differences between a claim under § 1114 (trademark infringement) and §

18  1125(a) (false designation of origin), "the analysis under the two provisions is oftentimes

19  identical."  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 n.8 (9th

20  Cir. 1999).

21         Courts routinely find these elements met where the plaintiff establishes that defendants

22  have used a trademark in connection with the sale of fraudulent, counterfeit, or otherwise

23  unauthorized merchandise on the internet.  For example, in *Spy Optic, Inc. v. Alibaba.com, Inc.*,

24  the court considered an allegation against a company that improperly used a registered mark in

25

26  [7] While Quatic maintains that it sold services other than the fraudulent services challenged here, it destroyed the evidence of the services it sold, and did not produce any evidence showing customers purchasing services un-
27  related to Amazon. Pawar Dep. at 110:23-111:11.

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 28
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

the design of a website.  163 F. Supp. 3d 755 (C.D. Cal. 2015).  The court found that "by directing consumers to allegedly-infringing sellers, Defendant creates a likelihood that consumers would be confused as to the origin of the allegedly-infringing products—instead of buying authentic Spy products, consumers would unknowingly purchase counterfeit merchandise."  *Id.* at 765 (citing *Brookfield Commc'ns*, 174 F.3d at 1062-63).

Here, Quatic Software's Websites and Apps affirmatively and falsely conveyed an affiliation with Amazon, causing their victims to buy fake Alexa-support services.  Am. Compl. ¶¶ 63-71.  In reality, Amazon provides legitimate Alexa-support services to its customers, and it does so free of charge.  *Id.* ¶¶ 19-20.  Moreover, Quatic Software made false statements about the functionality of the investigator's Alexa device during both test purchases, stating problems prevented proper installation, while none existed.  Quatic Software's false and deceptive advertising and sale of useless services jeopardized the trust that customers place in the Amazon brand, which is one of the most recognized, valuable, and trusted brands in the world. *Id.* ¶ 16.

### c.    Amazon's Allegations in the Complaint Establish Quatic Software's Liability for Cybersquatting

To prove a cybersquatting claim, a plaintiff must show that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark."  *Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1102 (N.D. Cal. 2015) (internal quotation marks and citation omitted).

Under the first factor, Kumar, on behalf of Quatic Software, registered the domain echoalexaskill.com, on Quatic Software's Namecheap account.  Am. Compl. ¶ 45; Kumar Dep. at 168:5-9.

Under the second factor, the domain used registered trademarks of Amazon, Alexa and Echo, in a confusing manner.  The domain was registered to indicate it could assist with

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

downloading the Alexa app, yet it did not actually provide the Alexa app download. Am. Compl. ¶¶ 49-65, 70-76.  An individual who came across the domain could reasonably be confused about its affiliation with Amazon and whether it offered legitimate Alexa app downloads.  Particularly so, because users were directed to the website by searching Google for keywords like "download Alexa app, download Echo app, [and] download echo dot app." Kumar Dep. at 124:18-125:14.

Further, the domain was registered with a bad faith intent to profit from the Amazon Trademarks; the domain has been used in furtherance of a scheme to defraud consumers by deceiving them into believing Quatic Software's domain is affiliated with Amazon.  In fact, Pawar approved of the decision for Quatic Software to offer support for Amazon products, as he understood it would increase Quatic Software's revenue.  Pawar Dep. at 124:7-20.  The domain illegally utilized Amazon trademarks on it in furtherance of the fraudulent scheme. Quatic Software registered the domain to take advantage of the goodwill and recognizability of Amazon and its products.  Am. Compl. ¶ 131.

### 3.   Fourth *Eitel* Factor:  Quatic Software's Conduct Warrants the Damages Amazon Seeks

The fourth factor favors a default judgment because the sum of money Amazon seeks in damages is reasonable in light of Quatic Software's flagrant exploitation of victims' trust in Amazon.  Although courts are more cautious when a large damages award is involved, "the court must consider the amount of money at stake in relation to the seriousness of Defendant[s'] conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.  Under the trademark infringement claims, Amazon seeks $5 million—only half of the maximum statutory damages allowed for Quatic Software's willful use of five (when at least 7 were used) counterfeit marks. *See* 15 U.S.C. § 1117(c)(2); *see also Rolex Watch U.S.A., Inc., v. Watch Empire LLC,* 2015 WL 9690322, at *4 (C.D. Cal. Sep. 29, 2015) ("Because the damages sought arise directly from the language of Section 1117, the amount at stake is reasonably proportionate to the harm

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 30
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

Defendants caused."). "Where a defendant has engaged in willful infringement and refused to respond to the allegations brought against it," courts in the Ninth Circuit have found damages awards of this size weigh in favor of default judgment. *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010) (finding fourth factor weighed in favor of default judgment where plaintiff sought damages of up to $4.9 million for willful trademark and copyright infringement); *see also Wimo Labs, LLC v. eBay, Inc.*, 2017 WL 10439835, at *5 (C.D. Cal. Aug. 3, 2017) (same where plaintiff sought $4 million, as maximum statutory damages for willful counterfeiting of two trademarks); *Rolex Watch U.S.A., Inc.*, 2015 WL 9690322, at *4 (same where plaintiff sought $10 million, as maximum statutory damages for willful counterfeiting of five trademarks); *Nautilus, Inc. v. Chunchai Yu*, 2011 WL 13213575, at *13 (C.D. Cal. Dec. 19, 2011) (same where court awarded $12 million in statutory damages for willful trademark infringement); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (same where plaintiff sought $2 million, as then-maximum statutory damages for willful counterfeiting of two trademarks).

### 4.    Fifth *Eitel* Factor:  The Facts Are Undisputed

The fifth factor favors a default judgment because default has been entered.  Dkt. #100. "When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Curtis*, 33 F. Supp. 3d at 1212.  Moreover, Amazon's allegations are supported by the supporting declarations filed in this case, along with the testimony of Quatic Software's own directors admitting that the Websites and Apps did not do what they advertised– help users download the Alexa app.  *See* Pawar Dep at 175:7-10 (Question: "That download link was just showing an animation that made it look like it was downloading the Alexa app; right?" Answer: "Right."); *see also id.* at 205:5-11 (Question: "Did any of Quatic's websites actually install the Alexa app on users' devices?" Answer: "No sir. There is no such website."); *see also*

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 31
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

Kumar Dep. at 223:24-224:1 (Question: "And the app did not actually have the capability to locate an Amazon device or to download any Amazon software; correct?" Answer: "Correct.").

### 5. Sixth *Eitel* Factor: Quatic Software's Failure to Appear and Obtain Counsel Is Inexcusable

The sixth factor weighs in favor of default judgment because Quatic Software is well aware of this litigation and Amazon's intention of seeking a default judgment. In fact, Quatic Software was actively involved in the litigation until this Court granted Amazon leave to file the Amended Complaint (personally naming Pawar and Kumar), and Quatic Software's counsel withdrew. Here, Amazon properly served Quatic Software's counsel with the Amended Complaint through the Court's electronic filing system. Dkt. #81. Shortly thereafter, in granting counsel's motion to withdraw, the Court warned Quatic Software it could not be without counsel, and granted it 14 days to obtain counsel. Dkt. #87. Quatic Software failed to do so, and that failure is inexcusable. "In the default judgment context, there is no excusable neglect where a defendant is properly served with the Complaint, the notice of entry of default, and the papers in support of the default judgment motion." *Getty Images (US), Inc. v. Virtual Clinics*, 2014 WL 358412, at *5 (W.D. Wash. Jan. 31, 2014) (internal quotations and citation omitted); *see also Beck v. Pike*, 2017 WL 530354, at *2 (W.D. Wash. Feb. 9, 2017) (sixth factor "nearly always favors entry of default judgment").

Amazon also served Quatic Software (via registered international mail) with notice of the entry of default, and will serve the filed version of this motion and supporting papers by the same method. Garcia Decl. ¶ 12. There is no evidence of excusable neglect.

### 6. Seventh *Eitel* Factor: The Policy Favoring Decisions on the Merits Is Not Dispositive Where Quatic Software Knowingly Abandoned Its Defense

The final *Eitel* factor considers the preference for deciding cases on the merits. *Eitel*, 782 F.2d at 1471-72. "While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy,

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 32
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

standing alone, is not dispositive, especially where a defendant fails to appear or defend itself

in an action." *HICA Educ. Loan Corp. v. Warne*, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6,

2012).  Quatic Software knowingly abandoned *any* defense of this action.  Thus, its own

actions forestalled a decision on the merits.  Therefore, this factor is outweighed by all of the

other factors, all of which favor default judgment.

### C.        Amazon Is Entitled to Statutory Damages

Amazon seeks $1 million in statutory damages for each of the five Amazon Trademarks

Quatic Software willfully infringed, totaling $5 million.  Further, Amazon seeks to recover

$50,000 in statutory damages for the cybersquatting violations, for a total damages award of

$5,050,000.

The Lanham Act authorizes statutory damages of up to $2 million per mark for willful

trademark infringement, *see* 15 U.S.C. § 1117(c).  Taking into account the use of counterfeit

Amazon trademarks to commit widespread fraud, and the impact the fraud scheme had on

victims seeking legitimate Alexa-support services, an award of half the maximum statutory

damages is warranted to hold Quatic Software accountable and deter the future exploitation of

Amazon's trademarks by Quatic Software and others.  Such an award is particularly

appropriate here, where Quatic Software ***admitted*** to deceiving thousands of customers in

pursuit of revenue.  *See* Pawar Dep. at 189:21-190:21.

Amazon also seeks $50,000 in statutory damages, for the domain where Quatic

Software violated 15 U.S.C. § 1125(d).  *See Twitch Interactive, Inc. v. Johnston,* 2019 WL

3387977, at *8 (N.D. Cal. July 26, 2019) ("Courts have held that a plaintiff may recover both

actual and statutory damages for trademark infringement and statutory damages for

cybersquatting.").  Under 15 U.S.C. § 1117(d), plaintiffs can be awarded between $1,000 and

$100,000 per domain name, as the court considers just.  *See Digby Adler*, 79 F. Supp. 3d at

1108.  Like the claim for trademark infringement, taking into account the impact the fraud

scheme had on victims seeking legitimate Alexa-support services, an award of half the

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 33
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

maximum statutory damages, $50,000, is warranted to hold Quatic Software accountable and deter the future exploitation of Amazon's Trademarks by Quatic Software and others.

### 1.     Defendants Willfully Used Counterfeit Amazon Trademarks

"Willful trademark infringement occurs when the defendant's actions are willfully calculated to exploit the advantage of an established mark," *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015) (internal quotation marks and citation omitted), such as when the defendant's conduct is "deliberate, false, misleading, or fraudulent." *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015) (quotation marks omitted). In the default judgment context, allegations of willful conduct are deemed admitted based on the defendant's failure to defend. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

In this case, Amazon's allegations of willfulness are deemed admitted, and they are also supported by strong evidence. Quatic Software willfully used counterfeit versions of the Amazon Trademarks to impersonate Amazon and deceive victims into buying unnecessary services for phony Alexa-support services on the Websites and Apps. Am. Compl. ¶¶ 48-69. In fact, the entire purpose of the Websites and Apps was to deceive consumers into believing Quatic Software was affiliated with Amazon:

> **Question**. When did you first learn that Quatic was using websites that had displayed fake Alexa download error messages to generate traffic?
> **Answer**. In -- in middle 2000- -- in the last quarter of 2019. . .
> **Question**. And you and Mr. Kumar, when you learned about it in -- you know, perhaps sometime in October of 2019, you had the authority to stop that conduct, didn't you?
> **Answer**. Yes.
> **Question**. But you did not because it was generating revenue for Quatic; right?
> **Answer**. Yes.

Pawar Dep. at 189:21-190:21.

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 34
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

### 2.    A $5,050,000 Statutory Damages Award Is Reasonable Based on Quatic Software's Extensive and Deliberate Abuse of the Amazon Trademarks

"Statutory damages further 'compensatory and punitive purposes,' and help 'sanction and vindicate the statutory policy of discouraging infringement.'"  *Dream Games of Ariz. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) (quoting *L.A. News Serv. v. Reuters Television Int'l*, 149 F.3d 987, 996 (9th Cir. 1998)).[8]  "[A] plaintiff may recover statutory damages 'whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant.'"  *Peer Int'l Corp. v. Pausa Recs., Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990) (quoting *Harris v. Emus Recs. Corp.,* 734 F.2d 1329, 1335 (9th Cir. 1984)).  In default judgment cases, statutory damages are particularly appropriate "because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008) (internal quotation marks and citation omitted).

In cases of willful infringement, courts consider the need: (1) to compensate the plaintiff for the damage the defendant's actions caused; (2) to deter defendants from violating the trademarks; and (3) to punish defendants for willfully violating the trademarks.  *See Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1124 (C.D. Cal. 2007).  "The flagrant nature of defendants' activities underscores the need for a damages award that will deter them from engaging in such conduct in the future." *Nautilus*, 2011 WL 13213575, at *16; *see also Wimo Labs*, 2017 WL 10439835, at *6 (awarding *maximum* $4 million in statutory damages where defendants infringed two trademarks); *Rolex Watch*, 2015 WL 9690322, at *9 (awarding $5 million as half of maximum statutory damages where defendant infringed five trademarks); *Nautilus*, 2011 WL 13213575, at *16 (awarding *maximum* $8 million in statutory damages against three defendants and $4 million in statutory damages against remaining two defendants

---

[8] "[C]ourts faced with determining statutory damages under the [Lanham] Act have analogized to the body of case law interpreting a similar provision in the Copyright Act."  *Castworld*, 219 F.R.D. at 501.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

for infringing four trademarks); *Coach Servs., Inc. v. YNM, Inc.*, 2011 WL 1752091, at *5-6 (C.D. Cal. May 6, 2011) (awarding $1 million as half of maximum statutory damages where defendants infringed one trademark); *Castworld*, 219 F.R.D. at 501-02 (awarding *maximum* $2 million in statutory damages where defendants infringed two trademarks).

Here, the scope of Quatic Software's abuse of the Amazon Trademarks warrants a $5,050,000 statutory damages award. Quatic Software's Websites and Apps directly presented victims with numerous copies of the Amazon Trademarks to induce them to buy fake, unnecessary services. *See* Kumar Dep. at 49:17-50:16. The Websites and Apps had no purpose other than to commit fraud with the Amazon Trademarks. Quatic Software fully understood the illegality of its scheme, and in fact, the directors re-named one of Quatic Software's applications to "Alexus App Set Up," because Google would reject "Alexa" due to its infringement on Amazon's Trademarks. Kumar Dep. at 113:1-23, 114:25-115:9.

Quatic Software's scheme reached hundreds of thousands of victims, and in doing so, created a negative association with Amazon. Almost 90,000 victims downloaded the Apps in search for Alexa support services. An unknown number of victims visited Quatic Software's websites. Tens of thousands of victims purchased Quatic Software's unnecessary services, and, in the process, were unable to resolve legitimate technical issues for which they required support from Amazon. Garcia Decl. ¶8; Singh Dep. at 149:2-13, 150:1-4. By engaging with Quatic Software, the victims were harmed by: (1) Quatic Software's false statements about the security and functionality of Amazon devices, which diminishes the utility of Amazon's product; (2) Quatic Software's sale of services related to Alexa devices, which undermines Amazon's free services to its customers; and (3) Quatic Software's use of Amazon's brand to defraud customers, which, as evidenced by consumer complaints on Robojap's BBB page, caused customers to feel frustrated, angry, and disappointed, all in association with an Amazon product, through no fault of Amazon's. *See* Gooding Decl. ¶¶ 13-20 (detailing victim

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 36
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

statements, including "'I feel I was misrepresented by your company.  I believed I was communicating with someone from Amazon with reference to help in setting up my Alexa.'").

Quatic Software's deliberate refusal to participate in this litigation—and its refusal to comply with the Court's order compelling discovery on Amazon's damages—further impedes Amazon's ability to precisely calculate its harm.  Without documents in Quatic Software's exclusive control, Amazon cannot understand the full scope of Quatic Software's scheme, including the significant impact it had on victims across the United States.  Quatic Software has blatantly disregarded this Court's order to search for supplemental discovery in relation to its financial documents, Dkt. #85.  Statutory damages provide a way to value Amazon's otherwise unquantifiable damage to its reputation as one of the most highly regarded and trusted brands in the world.

The statutory damages Amazon seeks also serve to deter and punish Quatic Software, which has demonstrated a disregard of its infringing conduct.  Without a substantial damages award, Quatic Software will have virtually no incentive to stop abusing Amazon's brand.  While injunctive relief is both appropriate and necessary (as described below), it is not adequate alone to deter Quatic Software from continuing to perpetrate its illegal schemes.  Quatic Software operates a sophisticated operation, utilizing the services of many third-party companies.  A significant monetary judgment against Quatic Software will help Amazon stop Quatic Software's conduct by making it much more difficult for it to rely on legitimate commercial entities to generate profits (as legitimate commercial vendors are unlikely to contract with an entity with a significant recorded judgment).

### D.     Amazon Is Entitled to Injunctive Relief

In addition to monetary damages, Amazon seeks to permanently enjoin Quatic Software from further infringing the Amazon Trademarks.  The Lanham Act authorizes courts to grant injunctive relief "to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). "As a general rule, a permanent injunction will be granted when liability has been

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 37
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993).  A plaintiff seeking permanent injunctive relief must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  All four of these factors are satisfied here.

### 1.      Amazon Has Suffered Irreparable Harm

"Harm to business goodwill and reputation is unquantifiable and considered irreparable." *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) (citing *Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).  As part of the Trademark Modernization Act of 2020, Congress amended the text of 15 U.S.C. Section 1116(a) regarding injunctive relief in trademark infringement actions.[9] Namely, a plaintiff seeking injunctive relief "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection." 15 U.S.C. § 1116(a); *see, e.g.*, *Kinsley Tech. Co. v. Ya Creations, Inc.*, 2021 WL 2227394, at *4 (C.D. Cal. May 3, 2021) (applying presumption of irreparable harm in light of plaintiff's showing of a likelihood of success on the merits); *see also Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 2021 WL 254448, at *14 n.16 (N.D. Cal. Jan. 26, 2021) (noting how recent Lanham Act amendment "only reinforces the appropriateness of a permanent injunction").

Amazon has spent years building its reputation as one of the most highly regarded and trusted brands in the world.  Am. Compl. ¶¶ 1, 20.  Quatic Software perpetrated a widespread fraud that falsely advertised technical support services using Amazon Trademarks for Quatic

---

[9] The Trademark Modernization Act of 2020, Pub. L. No. 116-260 (codified as part of the Consolidated Appropriations Act, 2021), became effective on December 27, 2020.

Software's own profit.  *See id.* ¶¶ 20-76.  Quatic Software's actions eroded consumer trust in Amazon and undermined Amazon's substantial investment in its brand.  *Id.*  Accordingly, Amazon has suffered unquantifiable and irreparable harm.  *See, e.g.*, *Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co., Ltd.,* 2019 WL 1572675, at \*9 (W.D. Wash. Apr. 11, 2019*)* (finding irreparable injury because defendants' willful trademark infringement undermined plaintiff's investment in its trademark and caused plaintiff to lose control over its reputation and goodwill).

### 2. Monetary Damages Alone Are Inadequate

Quatic Software has demonstrated that it is indifferent to any attempt by Amazon to enforce its rights.  Robojap's director has confirmed that Quatic Software is continuing to provide some technical support services, and still operates its call center, albeit at a smaller scale.  Singh Dep. at 224:11-225:7.  Additionally, Quatic Software's failure to obtain counsel further suggests that its "infringing activities will not cease absent judicial intervention." *Warner Bros. Home Ent. Inc. v. Jimenez*, 2013 WL 3397672, at \*7 (C.D. Cal. July 8, 2013); *see also Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease."); *Patagonia, Inc. v. Tradition LLC*, 2019 WL 1059687, at \*6 (C.D. Cal. Mar. 4, 2019) ("[B]y virtue of defendant's failure to respond to this suit, there is no reason to conclude that defendant will not infringe plaintiff's . . . trademarks in the future.").  For these reasons, injunctive relief is necessary to prevent Quatic Software from continuing its fraudulent customer support schemes and abuse of Amazon's brand.  *See also Coach*, 2011 WL 1752091, at \*4 (in trademark cases, permanent injunction is appropriate unless it is "absolutely clear" that "defendant's infringing activities have ceased and will not begin again").

### 3. The Balance of Equities Favors a Permanent Injunction

"Defendants face no hardship in being enjoined from conducting illegal activities[.]" *Rolex Watch*, 2015 WL 9690322, at \*8.  Meanwhile, without an injunction, Amazon will

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 39
(2:20-CV-694-MJP)

continue to suffer irreparable harm from Quatic Software's fraudulent conduct, lose control over its brand and intellectual property, and have no other recourse.  Thus, the equities weigh heavily in favor of injunctive relief.  *See, e.g.*, *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("[W]ithout an injunction, Plaintiff will lose profits and goodwill, while an injunction will only proscribe Defendants' infringing activities.").

### 4. The Public Interest Would Be Served By a Permanent Injunction

The public has a strong interest in not being confused or deceived by fraudulent and infringing conduct. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009); *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) ("When a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his [] reputation.") (internal quotation marks and citation omitted).  Quatic Software has not only caused consumer confusion by impersonating Amazon, but it has deceived consumers in need of actual technical support, and collected money for useless services.  Am. Compl. ¶¶ 20-107.  Enjoining Quatic Software from continuing to perpetrate such harmful schemes is plainly in the public interest.

## IV.   CONCLUSION

For the foregoing reasons, Amazon respectfully requests the Court enter a default judgment against Quatic Software for $5,050,000 and enter the requested injunctive relief.

DATED this 18th day of October, 2021.

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 40
(2:20-CV-694-MJP)

1

2

Davis Wright Tremaine LLP
Attorneys for *Plaintiff Amazon.com Inc.*

3

By *s/ Melina Garcia*

4

Bonnie MacNaughton, WSBA #36110
Tim Cunningham, WSBA #50224
Melina Garcia, WSBA #58036
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: 206-622-3150
Fax: 206-757-7700
E-mail: bonniemacnaughton@dwt.com
            timcunningham@dwt.com
            melinagarcia@dwt.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 41
(2:20-CV-694-MJP)

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3

        I certify that on October 18, 2021, a copy of this pleading was filed electronically with

4

the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all

5

counsel of record via the court's electronic filing system, and will be sent via Federal Express

6

International mail to:

7

        Quatic Software Solutions Pvt. Ltd.
        HOUSE NO. 235, HUDA, SECTOR-1 SHAHBAD
        KURUKSHETRA HR 136135
        IN

8

9

10

        Hitesh Kumar Sachdeva
        HOUSE NO. 235, HUDA, SECTOR-1 SHAHBAD
        KURUKSHETRA HR 136135
        IN

11

12

13

        Gureen Pawar
        HOUSE NO. 235, HUDA, SECTOR-1 SHAHBAD
        KURUKSHETRA HR 136135
        IN

14

15

16

                                                    *s/ Melina Garcia*
                                                    Melina Garcia

17

18

19

20

21

22

23

24

25

26

27

AMAZON'S MOTION FOR DEFAULT JUDGMENT - 42
(2:20-CV-694-MJP)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax